**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA

v.

JOSEPH LAWHORN,
    *Defendant*.

Criminal No. ELH-09-541
Related Civil No.: ELH-20-3447

**MEMORANDUM OPINION**

This case concerns a post-conviction petition filed pursuant to 28 U.S.C. § 2255 by defendant Joseph Lawhorn. *See* ECF 45 (the "Motion"). Lawhorn entered a plea of guilty on October 27, 2010 (ECF 32) to Count Three of an Indictment (ECF 1), charging him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). Under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 180 months of incarceration, which corresponded to the congressionally mandated minimum sentence. ECF 33 (Plea Agreement), ¶ 9. The term of supervised release, which ranged from five years to life, was left open in the Plea Agreement. *See* ECF 33; ECF 54 (Sentencing Transcript), at 3.

Sentencing was held on February 1, 2011. ECF 41. Judge William Nickerson, to whom the case was then assigned, imposed the agreed upon sentence of fifteen years of imprisonment, along with a term of supervised release of life. *See* ECF 43 (Judgment) at 2; ECF 54 at 8.[1] Judge Nickerson imposed the "Statutory Conditions" of supervised release, but suspended the drug testing condition. ECF 43 at 3. He also imposed the "Standard Conditions" of supervised release.

---

[1] The case was reassigned to me on November 25, 2020, after the retirement of Judge Nickerson. *See* Docket.

*Id.* And, Judge Nickerson announced the following "Additional Conditions": defendant was required to partake in "an appropriate mental health treatment program . . . ."; defendant is not "to use a computer" without prior permission of the probation agent; and the defendant is required to register as a sex offender wherever he resides or works. ECF 54 at 8–9; *see* ECF 43 at 4.

Defendant did not note an appeal. *See* Docket.[2] Accordingly, defendant's conviction became final on February 15, 2011. *See* Fed. R. App. 4(b)(1)(A).

Over nine years later, on November 25, 2020, Lawhorn, who is now self-represented, filed the Motion. ECF 45. He claims that his "Conditions of Supervised Release are unconstitutional, vague, overly broad, and do not comport with current law or the U.S. Sentencing Guidelines Manual." *Id.* at 4. The government opposed the Motion. ECF 55. It argues that the Motion is untimely. *Id.* at 1. Lawhorn did not reply.

On October 4, 2021, during the pendency of the Motion, defendant was released from incarceration. *See BOP Inmate Locator*, https://www.bop.gov/mobile/find_inmate/#inmate_results (search by BOP Register Number 44487-037). Therefore, on January 10, 2024, I wrote to the defendant and asked him to advise me as to whether he wishes to pursue the Motion. ECF 69. By letter docketed on January 26, 2024, defendant stated that he wishes to pursue the Motion. ECF 70. Because defendant remains on supervised release, his Motion is not moot. *See United States v. Johnson*, 729 F. App'x 229, 230 (4th Cir. 2018).

In *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), the Fourth Circuit held that "all non-mandatory conditions of supervised release must be announced at a defendant's sentencing

---

[2] In the Plea Agreement, Lawhorn waived many of his appellate rights. *See* ECF 33, ¶ 11.

hearing." *Id.* at 296.  In connection with my review of the Motion, and with *Rogers* in mind, I wrote to the parties on February 1, 2024 (ECF 71), stating, in part, *id.* at 2:

> Upon review of the Motion, it is arguable that Judge Nickerson's imposition of the standard conditions of supervised release would not comport with current Fourth Circuit law.  *See, e.g., United States v. Friend*, 2023 WL 8469460, at *1 (4th Cir. Dec. 7, 2023) [(per curiam)] ("A district court is required to orally pronounce at sentencing all discretionary conditions of supervised release.") (citing *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020)); *United States v. Lee*, 2023 WL 3884112, at *1 (4th Cir. June 8, 2023) ("'[A]ll non-mandatory conditions of supervised release must be announced at defendant's sentencing hearing.'") (quoting *Rogers*, 961 F.3d at 296).  It is also arguable that, under recent case law, there are defects in regard to certain special conditions.  However, it is not apparent whether the Fourth Circuit's decisions are retroactive, or otherwise apply in the context of this case. Nor is it clear that the defendant's contentions fall within 28 U.S.C. § 2255(f)(3).

Therefore, I asked the parties to address the Court's concerns.  ECF 71.  The government submitted a "Supplemental Response Brief."  ECF 74 ("Supplement").  Lawhorn has not responded.

The government argues, in part, that "Lawhorn has long since forfeited his ability to raise any challenge to his supervised release conditions under *Rogers*," 961 F.3d 291.  ECF 74 at 1. According to the government, because *Rogers* is a Fourth Circuit opinion, and not a Supreme Court opinion, it does not fall within 28 U.S.C. § 2255(f)(3).  *Id.* at 5.  Further, the government argues that *Rogers* has not been held "retroactive and available on collateral review."  *Id.*  And, the government contends that even if the *Rogers* standard applies, Lawhorn's claim still fails under the "cause and prejudice" standard outlined in *United States v. Frady*, 456 U.S. 152, 165 (1982). *Id.* at 6.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall dismiss the Motion as untimely.

3

I.      **Factual Background**

Lawhorn was indicted on October 15, 2009. ECF 1. The Indictment contained six counts. Counts One through Five charged Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). *Id.* at 1–6. Count Six charged a threatening communication, in violation of 18 U.S.C. § 875(d).

As noted, defendant entered a plea of guilty on October 27, 2010, to Count Three. ECF 32; ECF 49 (Rule 11 Transcript). Defendant was 36 years old at the time. ECF 49 at 14.

Under ¶ 6 of the Plea Agreement, the parties contemplated a final offense level of 35, after three deductions under § 3E1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 33. Defendant's Presentence Report ("PSR", ECF 72) reflected a criminal history category of I. *Id.* ¶ 50.[3] Therefore, the advisory Guidelines called for a sentence ranging from 180 to 210 months of incarceration. *Id.* at ¶ 56. And, as noted, Count Three required a mandatory minimum sentence of 180 months. *Id.* at 1(a); *id.* ¶ 55; *see* 18 U.S.C. § 2251(a). Under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 180 months of incarceration. ECF 33, ¶ 9.

The Plea Agreement contains a stipulation of facts. *Id.* at 9–10. It indicates that on December 17, 2008, the Baltimore County Police Department received information that Lawhorn had sexually abused two males between the ages of twelve and sixteen. *Id.* at 9. The police executed a search warrant at Lawhorn's residence on December 23, 2008, where they found "two computers, three cameras, and numerous digital removable media." *Id.* Lawhorn was arrested

---

[3] I located the Presentence Report in the Chambers file of Judge Nickerson. I submitted it for docketing, under seal. *See* ECF 72.

that day at his place of employment. *Id.* After waiving his *Miranda* rights,[4] Lawhorn admitted to police that his computer contained photos of himself and two minors engaged in sexually explicit conduct. *Id.* The photos were taken with Lawhorn's iPhone. *Id.*

An investigation of Lawhorn's computers uncovered 22 image files of the two minors engaged in sexually explicit conduct. *Id.* Image files taken from Lawhorn's iPhone and computer revealed that Lawhorn had sex with the two minors. *Id.* Defendant agreed with the accuracy of the factual summary in the Plea Agreement and as presented by the prosecutor. ECF 49 at 16.

At the guilty plea proceeding before Judge Nickerson on October 27, 2010, the defendant was placed under oath. *Id.* at 2. The transcript reflects that he was carefully advised of the terms of the Plea Agreement. *Id.* at 4–14. Moreover, defense counsel represented that he had "probably spent two or three hours" discussing "the plea agreement itself and the sentencing issues" with Lawhorn, in addition to previous "extensive[]" discussions about the case. *Id.* at 7–8.

The Court fully reviewed Paragraph 11 of the Plea Agreement, titled "Waiver of Appeal." *Id.* at 10; *see also id.* at 6–7. Among other things, defendant waived his right to appeal his conviction. *Id.* at 7. He also waived his right to appeal the sentence, unless the sentence exceeded fifteen years of imprisonment. *Id.* Further, Judge Nickerson stated, *id.* at 5–6:

> And you understand that the statute that governs this particular charge provides for both minimum and maximum penalties. Specifically with regard to imprisonment, the statute provides a minimum of at least 15 years imprisonment and a maximum of 30 years. It provides for supervised release of life, "supervised release" meaning essentially what it says. And that is after being released from any prison term, living under supervision with certain conditions. If those conditions were not met, and irregardless of when any violation might occur, you would be brought back into court and likely returned to jail. And with supervised release, there's no credit given for any time that you might have been on supervised release but you had not committed any violations. In addition, that statute provides for a fine up to $250,000 and a $100 assessment that's due at sentencing.

---

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

5

Judge Nickerson then asked, *id.* at 6: "Are you aware of all those things?" Defendant responded, "Yes, sir." *Id.*

At sentencing on February 1, 2011, Judge Nickerson "adopt[ed] the presentence report with regard to the guideline calculation, rendering a bottom line offense level 35, Criminal History Category I, sentencing range of 180 to 210 months." ECF 54 at 2. As indicated, in accordance with the Plea Agreement, Judge Nickerson imposed a sentence of 180 months of imprisonment. *Id.* at 8.

As to supervised release, the statutory minimum is a term of five years, with Guidelines ranging from five years to life. ECF 72, ¶ 58. The Presentence Report recommended a term of life. *Id.* ¶ 59.

The government noted at sentencing that the issue of the term of supervised release was "left open in the plea agreement." ECF 54 at 3. The government sought a term of supervised release of life. *Id.* at 3–4. In contrast, defense counsel requested five years of supervised release. *Id.* at 5–6. Judge Nickerson stated, *id.* at 8–9:

> I appreciate the arguments presented by [defense counsel] regarding supervised release. However, in my view, and based on what I know thus far, life is the appropriate term. Also, recognizing that supervised release is subject to modification if it should be determined by the supervising probation officer that a modification is appropriate, somewhere down the line an appropriate motion can be presented.
>
> The conditions of supervised release will be standard conditions noted on the judgment form. And I'm going to suspend the drug monitoring condition, given that there's no evidence of any drug abuse. I'll add a condition that an appropriate mental health treatment program be undertaken. A condition that Mr. Lawhorn not use a computer or other device providing access to the internet without preapproval by the probation officer. And that Mr. Lawhorn register as a sex offender wherever he may reside or work, or wherever the probation officer may deem it to be important.

The Judgment (ECF 43) contains "Statutory Conditions Of Supervised Release" as well as "Standard Conditions Of Supervision." *Id.* at 3. The Standard Conditions include the following, *id.*:

1) The defendant shall not leave the judicial district without permission of the court or probation officer;
2) The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

\* \* \*

7) The defendant shall refrain from excessive use of alcohol;
8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any persons convicted of a felony unless granted permission to do so by the probation officer;

\* \* \*

14) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

The Judgment also includes three "Additional Conditions" of supervised release, *id.* at 4: (1) "The defendant shall satisfactorily participate in a mental health treatment program approved by the probation officer, which may include evaluation, counseling, and testing as deemed necessary by the probation officer"; (2) "The defendant shall not possess or use any computer, except that with the permission of the probation officer, a computer may be used in connection with authorized employment"; and (3) "The defendant shall register with any federal state, and/or local sex offender registration agency in any location where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the probation officer."

At the conclusion of sentencing, the Court advised defendant that he "waived his appellate rights, having reserved them only if a sentence were greater than 180 months." ECF 54 at 9. No

7

appeal was filed. Indeed, no activity in the case occurred until November 25, 2020, when defendant filed his Motion (ECF 45).

## II.     Legal Standard

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426–27 (1962) (citing 28 U.S.C. § 2255); *see United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In order to prevail on a § 2255 motion, a defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

Of relevance here, § 2255(f) imposes a one-year period of limitations, within which a petitioner must file a motion. This one-year period begins on the latest of the following dates: (1) the date on which the petitioner's judgment became final; (2) the date on which any

8

unconstitutional, government-created impediment preventing the petitioner from filing this motion was lifted; (3) the date on which a newly asserted right was recognized by the Supreme Court and made retroactive on collateral review; or (4) the date on which the facts supporting the petitioner's claim for relief "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Indeed, conditions of supervised release "'must instead be challenged on direct appeal from the original conviction and sentence.'" *United States v. Amin*, 85 F.4th 727, 736 (4th Cir. 2023) (quoting *United States v. Holman*, 532 F.3d 284, 287 n.1 (4th Cir. 2008)).

A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'") (citation omitted); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019)

(discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009).

Generally, the rule governing procedural default of claims brought under § 2255 precludes consideration of any contentions that "'could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains.'" *Pettiford*, 612 F.3d at 280 (quoting *Mikalajunas*, 186 F.3d at 492–93). Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also Reed*, 512 U.S. at 354 (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Murray*, 477 U.S. at 496; *Frady*, 456 U.S. at 167–68.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense," such as the novelty of the claim or a denial of effective assistance of counsel, "impeded counsel's efforts" to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel").

Additionally, the alleged error cannot simply create a possibility of prejudice, but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Pursuant to the Supreme Court's ruling in *Carrier*, 477 U.S. at 494, prejudice does not support relief of a

10

procedural default in the absence of a showing of cause. *See also Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).[5]

The Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted) (alteration in *Morrison*); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021) (quoting 28 U.S.C. § 2255(b)); *see United States v. Lemaster*, 403 F.3d 216, 220–23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim . . . ." *Mayhew*, 995 F.3d at 176–77. If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

---

[5] Defendant does not claim actual innocence.

11

In my view, no hearing is necessary here, because credibility is not implicated.

### III.   Discussion

#### A.   28 U.S.C. § 2255(f)(1)

Lawhorn was sentenced on February 1, 2011. ECF 43. The Judgment was entered on the same date. *Id.* Lawhorn had fourteen days to note an appeal. Fed. R. App. Pro. 4(b)(1)(A)(i). No appeal was filed. Lawhorn filed the Motion on November 25, 2020, almost ten years after his guilty plea. ECF 45.

Section 2255(f) of 28 U.S.C. imposes a one-year period of limitations, within which a petitioner must file a post-conviction petition. This one-year period begins on the latest of the following dates: (1) the date on which the petitioner's judgment became final; (2) the date on which any unconstitutional, government-created impediment preventing the petitioner from filing this motion was lifted; (3) the date on which a newly asserted right was recognized by the Supreme Court and made retroactive on collateral review; or (4) the date on which the facts supporting the petitioner's claim for relief "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4).

Here, the judgment was entered on February 1, 2011 (ECF 43), and defendant did not note an appeal. Therefore, the one-year period to file for post-conviction relief began fourteen days after entry of judgment, on February 15, 2011. On that date, defendant's time to note a direct appeal expired. *See* Fed. R. App. Pro. 4(b)(1)(A)(i). Yet, defendant's Motion was not filed until November 25, 2020—more than eight years after the expiration of the one-year period outlined in § 2255(f)(1).

In its Opposition (ECF 55), the government observes that the Motion "was filed more than nine years after final judgment was entered, well in excess of the applicable one-year statute of

limitations, which expired by February 15, 2012, one year and fourteen days after judgment was entered." *Id.* (citing 28 U.S.C § 2255(f)(1)). The government asserts, ECF 55 at 1: "No basis exists to support a conclusion that the Defendant's motion was timely . . . ."

I agree with the government. Therefore, unless another provision of § 2255(f) applies, the Motion appears to be untimely on its face.

Under *Holland v. Florida*, 560 U.S. 631 (2010), "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is available in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (applying equitable tolling to one-year limitation period in 28 U.S.C. § 2255) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)) (additional citations omitted); *see Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

Notably, a petitioner need show only "reasonable diligence." There is no requirement for "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citation omitted). But, defendant has failed to "explain how he exercised diligence during the original limitations period." *Smith v. Warden of FCI Bennettsville*, JRR-22-3340, 2023 WL 3251411, at *5 (D. Md. May 4, 2023).

Under § 2255(f)(4), the one-year period of limitations may begin on the date on which the facts supporting the petitioner's claim for relief "could have been discovered through the exercise of due diligence." Defendant was present at his sentencing. He was aware of what transpired. But, he cites a change in the law, discussed *infra*, to excuse his delay.

13

On the facts advanced here, defendant offers no grounds to invoke equitable tolling. *See Allen v. United States*, WDQ-12-2260, 2013 WL 4495670, at *2 (D. Md. Aug. 16, 2013) (dismissing the § 2255 motion because defendant failed "to establish factors that warrant equitable tolling of the statute of limitations"); *Diaz v. United States*, WMN-12-3414, 2013 WL 709783, at *1 (D. Md. Feb. 26, 2013) ("[Petitioner] did not file the Motion until . . . eight months after the limitations period expired. Unless principles of equitable tolling apply, the Motion must be dismissed as untimely.").

Nor does § 2255(f)(4) salvage the Motion. As the government argues, § 2255(f)(4) does not apply, as Lawhorn "was present at his own sentencing and surely had all the factual data he needed if he wanted to make this claim earlier." *Id.*

Therefore, I turn to consider §§ 2255(f)(2) and (3).

### B. 28 U.S.C. § 2255(f)(3)

Under § 2255(f)(3), the one-year limitations period may begin on the date on which a newly asserted right is recognized by the Supreme Court and made retroactive on collateral review. *See* 28 U.S.C. § 2255(f)(3).

In his Motion, defendant attacks the Standard Conditions of supervised release, as well as the Additional Conditions, asserting: "Conditions of Supervised Release are unconstitutional, vague, overly broad, and do not comport with current law or the U.S. Sentencing Guidelines Manual." ECF 45 at 4; *see also id.* at 13.

Defendant advances multiple arguments to support his contentions, including, ECF 45 at 13–17: (1) "The court failed to explain, on the record, the Standard Conditions of Supervision, why they are necessary in this case, or why a first-time offender was given lifetime supervision" (*id.* at 13); (2) the Standard Condition that Lawhorn not leave the judicial district without

permission of the court or the probation officer "imposes a greater restriction on Petitioner's liberty than necessary" (*id.* at 14); (3) the Standard Conditions requiring Lawhorn to report to the probation officer each month, and answer the officer's questions truthfully, "surpass the requirements" of the Guidelines (*id.* at 14–15); (4) the Standard Condition that Lawhorn "'refrain from excessive use of alcohol'" is "contrary to current case law, is overly vague, undefined, has no relation to Petitioner's past pattern of behavior, was not explained by the court, and should be removed" (*id.* at 15); (5) the Standard Condition that Lawhorn "'shall not frequent places where controlled substances are illegally sold, distributed, used or administered'" is "overly vague, and unconstitutional" (*id.* at 15–16); (6) the Standard Condition that Lawhorn shall not associate with persons engaged in criminal activity or who have committed a felony is "vague and undefined," as well as unconstitutional (*id.* at 16); and (7) the Standard Condition that Lawhorn "notify third parties of risks that may be occasioned by his criminal record, personal history, or characteristics" is "vague, overly broad, [and] unconstitutional" (*id.* at 17).

As to the Additional Conditions, Lawhorn argues that Judge Nickerson "failed to adequately explain at sentencing why [he] imposed the additional conditions of [supervised release] regarding computer usage and participation in a mental health treatment program." *Id.* at 17–18. He asserts that the requirement to participate in a mental health program violates his Fifth Amendment rights and constitutes an abuse of discretion. *Id.* at 16–22. And, he contends that the Condition of "prohibiting Petitioner from possessing or using any computer is unconstitutional," as it violates his First Amendment rights. *Id.* at 22.

With respect to the belated filing of the Motion, Lawhorn explains, *id.* at 10: "This Motion is filed on the basis of newly discovered case law," and he points to six cases on which he relies. *Id.* Two of the cases were decided more than one year prior to the filing of the Motion on

November 25, 2020: *United States v. Wroblewski*, 781 Fed. Appx. 158 (4th Cir. 2019) (per curiam) (decided July 12, 2019); *United States v. Ross*, 912 F.3d 740 (4th Cir. 2019) (decided January 14, 2019).  Four of the cases were decided within one year of the filing of the Motion: *United States v. Mejia-Ramos*, 798 Fed. Appx. 749 (4th Cir. 2019) (per curiam) (decided December 9, 2019); *United States v. Arbaugh*, 951 F.3d 167 (4th Cir. 2020) (decided February 20, 2020); *United States v. Richards*, 958 F.3d 961 (10th Cir. 2020) (decided May 6, 2020); and *United States v. Van Donk*, 961 F.3d 314 (4th Cir. 2020) (decided June 8, 2020).  Defendant does not cite the case of *United States v. Rogers*, 961 F.3d 291, decided by the Fourth Circuit on June 2, 2020.

A motion is timely under § 2255(f)(3) if it falls within one year of "the date on which a newly asserted right was recognized by the Supreme Court and made retroactive on collateral review."  However, defendant does not cite any Supreme Court cases decided within one year of the filing of his Motion.

The Fourth Circuit has recently made clear that "[a] district court is required to orally pronounce at sentencing all discretionary conditions of supervised release." *Friend*, 2023 WL 8469460, at *1 (citing *Rogers*, 961 F.3d at 296); *see Lee*, 2023 WL 3884112, at *1 (stating that "'all non-mandatory conditions of supervised release must be announced at a defendant's sentencing hearing'") (quoting *Rogers*, 961 F.3d at 296).  Moreover, "'[d]istrict courts have 'broad latitude' to impose discretionary conditions of supervised release. But when they do, they have a duty to explain why.'" *United States v. Locklear*, 2023 WL 3617838, at *1 (4th Cir. May 24, 2023) (per curiam) (quoting *United States v. Boyd*, 5 F.4th 550, 557 (4th Cir. 2021) (citations omitted)).

In its Supplement (ECF 74), the government argues that "the Defendant's only assertion concerning timeliness states that '[t]his motion is filed on the basis of newly discovered case law'

16

and [he] goes on to list six cases, none of which are Supreme Court opinions." *Id.* at 7 (quoting ECF 45 at 10). The government reiterates: "The Defendant does not provide a Supreme Court case within one year of his filing his Motion as a basis for his timeliness, let alone a Supreme Court case that establishes a new and retroactive right." *Id.* at 8 (citation omitted). Thus, the government maintains that the Motion is not timely under 28 U.S.C. § 2255(f)(3), because defendant fails to "assert that the Supreme Court created any new right related to his claims." *Id.* at 7–8.

Even assuming that *Rogers*, 961 F.3d 291, generally applies to a post-conviction matter, the government contends that "Lawhorn has long since forfeited his ability to raise any challenge to his supervised release conditions under *Rogers*." *Id.* at 1. It points out that "the Fourth Circuit has recently held that a defendant is barred from raising *Rogers* error on direct appeal if the notice of appeal was untimely under Fed. R. App. 4(b)." *Id.* (citing *United States v. Brantley*, 87 F.4th 262, 266–67 (4th Cir. 2023)). Consequently, the government argues: "If *Rogers* error can be forfeited by failing to make a timely *direct* appeal, it surely is forfeited where it is first raised in a habeas filing more than a decade after the original judgment was imposed." *Id.* at 1 (emphasis in original). And, the government contends that because "Lawhorn failed to raise any direct appeal . . . . his *Rogers* claims are barred under *Brantley*." ECF 74 at 4.

In addition, the government asserts: "In general, a petitioner may not bring claims under § 2255 that he could have raised on direct appeal." *Id.* at 3 (citing *Frady*, 456 U.S. at 167) (emphasis in original). The government explains that, "[t]o overcome this bar, the petitioner must show 'cause and actual prejudice.'" ECF 74 at 3 (quoting *Bousley*, 523 U.S. at 622). Thus, the government maintains that, even if the *Rogers* standard applies, Lawhorn's claim still fails under the "cause and prejudice" standards of *Frady*, 456 U.S. 152. *Id.* at 6.

17

According to the government, Lawhorn fails the "cause" prong of the test as "he offers no excuse on why he did not raise this claim earlier . . . ." *Id.* And, the government claims that Lawhorn also "fails to argue any prejudice stemming from the alleged discrepancy between the oral sentence and the written judgment" because "[t]here is no indication that the conditions would have been different had they been orally conveyed," as "[t]he only issue at sentencing was the length of supervised release, not the terms of the conditions of supervised release." *Id.* (emphasis in original). Thus, the government contends that Lawhorn's assertion that his conditions "are too long . . . is hardly the kind of prejudice to overcome procedural default." *Id.*

Further, the government observes that Lawhorn does not cite *Rogers*, 961 F.3d 291, decided by the Fourth Circuit in June 2020. *Id.* at 5. It asserts that, "read fairly, the gravamen of his complaint is whether the district court adequately tailored the conditions to the facts and provided sufficient explanation for his imposition of conditions." *Id.* Thus, the government posits that defendant's arguments amount to a "procedural reasonableness claim" that "does not sound in *Rogers*." *Id.*

In my view, Lawhorn fails to satisfy § 2255(f)(3). As the government maintains, Lawhorn does not rely on any Supreme Court cases to support his contentions. Nor does he explain how *Rogers* applies retroactively. Further, even if defendant were to cite to a newly established and retroactive right derived from a Supreme Court opinion, defendant has failed to show "cause and actual prejudice." Accordingly, I conclude that § 2255(f)(3) does not excuse the delay.

### C.  Section 2255(f)(2)

Pursuant to 28 U.S.C. § 2255(f)(2), the one-year period of limitations may begin on the date on which any unconstitutional, government-created impediment preventing the petitioner from filing this Motion was lifted.

The government correctly observes that § 2255(f)(2) does not apply here, "because there was no impediment to [Lawhorn] making this claim prior to now." ECF 74 at 6. Indeed, Lawhorn does not allege an impediment to his filing that would fall within the parameters of § 2255(f)(2).

### IV.     Conclusion

For the foregoing reasons, I shall dismiss the Motion as untimely. An Order follows, consistent with this Memorandum Opinion.

### V.     Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post conviction claim.

A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003).

As indicated, a COA may issue only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Defendant has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.[6]

Date: March 11, 2024                     /s/
                                         Ellen L. Hollander
                                         United States District Judge

---

[6] The denial of a COA by the district court does not preclude defendant from seeking a COA from the appellate court, *i.e.*, the United States Court of Appeals for the Fourth Circuit.